UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JACKSON NATIONAL LIFE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil No. 3:14-CV-1924<br>Judge Aleta A. Trauger |
| CYNTHIA MEDLINE POOLE, JERE POOLE COWAN, CHARLES A. POOLE, JR., and FORETHOUGHT CAPITAL FUNDING, INC., | ) ) ) ) ) ) | |
| Claimants. | ) | |

## MEMORANDUM

There are two pending motions before the court. On November 21, 2014, plaintiff Jackson National Life Insurance Company ("Jackson") filed a Motion to Discharge (Docket No. 24), to which (a) claimant Cynthia Medline Poole ("Cynthia Poole") has filed a Response (Docket No. 28) and (b) claimants Jere Poole Cowan ("Poole Cowan") and Charles A. Poole, Jr. ("Poole, Jr.") have filed a Response (Docket No. 30). In addition, Poole has filed a Motion to File an Amended Answer and Counter-Complaint ("Motion to Amend") (Docket No. 29), to which Jackson has filed a Response (Docket No. 31), and Poole has filed a Reply (Docket No. 40). For the following reasons, the court will deny the Motion to Amend and grant the Motion to Discharge.

## BACKGROUND AND PROCEDURAL HISTORY

Jackson is a Michigan corporation that, *inter alia*, issues life insurance policies. Claimant Cynthia Poole resides in Rutherford County, Tennessee. (*Id*. at ¶ 2.) Claimants Poole Cowan

1

and Poole Jr. reside in Sumner County, Tennessee. (*Id*. at ¶¶ 3-4.) Claimant Forethought Capital Funding, Inc. ("FCF") is an Indiana corporation that provides at-need insurance assignment services for the funeral and cemetery industry. (*Id*. at ¶ 5.)

In July 1996, Jackson issued a life insurance policy ("Policy"), insuring the life of Charles A. Poole, Sr. ("Decedent").[1] (*Id*. at ¶ 8.) The Decedent was the owner of the policy, and he designated his then-wife Mary Lou Poole and his children Poole Cowan and Poole Jr. as the primary beneficiaries of the Policy (to receive thirty-four percent, thirty-three percent, and thirty-three percent of the proceeds, respectively). (*Id*.) In November 2000, the Decedent requested to change his beneficiary designation such that his children, Poole Cowan and Poole Jr., would each receive fifty percent of the proceeds of the Policy. (*Id*. at ¶ 9.) In October 2009, Jackson received a beneficiary change form purporting to name the Decedent's then-wife, Cynthia Poole, as the 100% irrevocable primary beneficiary of the Policy. (*Id*. at ¶ 10.) Jackson acknowledged this change in writing. (Docket No. 16, Ex. 2.)

The Decedent died on August 3, 2014, in Rutherford County, Tennessee. (*Id*. at ¶ 11.) The value of the Policy at the time of the Decedent's death was $100,000. (*Id*.) On August 5, 2014, Cynthia Poole submitted a claim for benefits under the Policy. (*Id*. at ¶ 13.) On the same day, Cynthia Poole made an irrevocable assignment of a portion of the proceeds of the Policy to FCF. (*Id*. at ¶ 14.)

On August 25, 2014, Poole Cowan sent correspondence to Jackson, via fax and email,

---

[1] The facts relevant to the pending motions are not in dispute. Unless otherwise noted, the court recounts the facts as alleged in the Complaint for Interpleader (Docket No. 1).

stating that she is the daughter of the Decedent and disputing the claim to the Policy proceeds made by Cynthia Poole. (*Id*. at ¶ 15.) In the correspondence, Poole Cowan alleged coercion and fraud in connection with the Decedent's October 2009 irrevocable beneficiary change.[2] (*Id*. at ¶ 15.) As of that time, Jackson faced adverse claims for the benefits under the Policy and was unable to determine which party is entitled to the death benefit. (*Id*. at ¶ 17.) On August 25, 2014, without contacting Cynthia Poole regarding Poole Cowan's allegations, Jackson informed Cynthia Poole by mail that it had decided to file an interpleader action to resolve multiple requests for payment of the Policy proceeds. (Docket No. 16, Ex. 5.) On October 17, 2014, Cynthia Poole made a self-styled "formal demand" on Jackson and threatened litigation pursuant to Tenn. Code Ann. § 56-7-105. (Docket No. 16, Ex. 6.)

On September 29, 2014, Jackson filed a Complaint in Interpleader ("Complaint") pursuant to 28 U.S.C. § 1335, in which Jackson asked the court to determine the proper recipient(s) of the Policy proceeds. (Docket No. 1.) Contemporaneously, Jackson moved to deposit the full amount of the death benefit, plus certain interest, with the court. (Docket No. 10.) The court granted the motion and, on November 12, 2014, Jackson deposited $100,931.51 into the registry of the court. (Docket No. 20.) On November 21, 2014, Jackson filed the pending

---

[2] In the Reply, Cynthia Poole states that the signatures of Poole on the November 2000 and October 2009 forms are "identical." This is merely an unsupported opinion. Beyond that, however, it is a question of no importance at this stage. When Poole Cowan challenged the award of the death benefit to Cynthia Poole, Poole Cowan alleged that the Decedent was coerced into changing a beneficiary designation under fraudulent circumstances. (Docket No. 8, Ex. 6. at 2.) In other words, Poole Cowan alleged that the Decedent had been coerced into signing the October 2009 form. In this scenario, the signatures on both the November 2000 and October 2009 forms would be the same. Jackson's conclusion as to the existence of adverse claimants, therefore, would not necessarily have been premised upon the existence of similar or dissimilar signatures.

3

Motion to Discharge, in which it seeks to be discharged from this action and relieved of all liability under the Policy. (Docket No. 24.)

The claimants timely filed Answers to the Complaint. (Docket No. 16, 19, 22). On December 3, 2014, Cynthia Poole filed a Motion to Compel Discovery. (Docket No. 26.) The court denied the motion because, under Federal Rule of Civil Procedure 26(d), discovery had been stayed until the initial case management conference. (Docket No. 27.) On December 4, 2014, Cynthia Poole filed the pending Motion to Amend pursuant to Federal Rules of Civil Procedure 13(a)(1)(A) and 15(a)(2), in which she requested permission to file a compulsory counter-complaint pursuant to Tenn. Code Ann. § 56-7-105. (Docket No. 29.)

## LEGAL STANDARDS

### I. Interpleader

Interpleader is an equitable proceeding that "affords a party who fears being exposed to the vexation of defending multiple claims to a limited fund or property that is under his control a procedure to settle the controversy and satisfy his obligation in a single proceeding." *U.S. v. High Tech. Prods., Inc.*, 497 F.3d 637, 641-42 (6th Cir. 2007) (quoting 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1704 (3d ed. 2001) (footnote omitted)); *see also Lorillard Tobacco Co. v. Chester, Willcox & Saxbe*, 589 F.3d 835, 849 (6th Cir. 2009). Interpleader may be invoked in the federal courts via Federal Rule of Civil Procedure 22 or via the Interpleader Act, 28 U.S.C. § 1335.[3] In this case, Jackson, in its Complaint, invoked interpleader via the Interpleader Act, basing jurisdiction on 28 U.S.C.

---

[3] The same general principles apply to both rule and statutory interpleader.

§§ 1332 and 1335.[4]

Statutory interpleader requires that "[t]wo or more adverse claimants . . . are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation." 28 U.S.C. § 1335(a)(1); *see also Treinies v. Sunshine Mining Co.*, 308 U.S. 66, 72 (1939) (noting that "there is a real controversy between the adverse claimants" in an interpleader action). 28 U.S.C. § 2361 provides for service of process and personal jurisdiction for statutory interpleader, to the effect that the "district court shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment," including awarding award attorney's fees.[5] *First Trust Corp. v. Bryant*, 410 F.3d 842, 856 (6th Cir. 2005) (citing 28 U.S.C. § 2361; 7 FEDERAL PRACTICE AND PROCEDURE § 1719 at 674; 4 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 22.06 at 22–98 (3d ed. 2002)). "The primary test for determining the propriety of interpleading adverse claimants and discharging the stakeholder ... is whether the stakeholder legitimately fears multiple vexation directed against a single fund [or property]."[6] *High Tech.*

---

[4] Jackson is diverse from all claimants.

[5] 28 U.S.C. § 2361 does not explicitly authorize the award of attorney's fees. However, based in part on that section's "all appropriate orders" language, "modern federal practice follows the traditional equity rule that gives the trial court discretion to allow a disinterested stakeholder to recover attorney's fees and costs from the stake itself." *First Trust Corp.*, 410 F.3d at 856 (quoting 4 MOORE'S FEDERAL PRACTICE § 22.06 at 22–98 to 22-99 & n. 4).

[6] An interpleader action typically proceeds in two stages. During the first stage, the court determines whether the stakeholder has properly invoked interpleader, including whether the court has jurisdiction over the suit, whether the stakeholder is actually threatened with double or multiple liability, and whether any equitable concerns prevent the use of interpleader. 7 FEDERAL PRACTICE AND PROCEDURE § 1714. During the second stage, the court determines the respective rights of the claimants to the fund or property at stake via normal litigation processes, including

5

*Prods.*, 497 F.3d at 642 (quoting 7 FEDERAL PRACTICE AND PROCEDURE § 1704 (footnote omitted)).

## II.     Amending Pleadings

Federal Rule of Civil Procedure 15(a) governs amending pleadings before trial. A party may amend a pleading once as a matter of course within (a) twenty-one days after serving it, or (b) if the pleading is one to which a responsive pleading is required, twenty-one days after service of a responsive pleading or twenty-one days after service of a motion under Rule 12(b), (e) or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1). In all other cases, a party may only amend a pleading by obtaining the opposing party's written consent or receiving leave of the court. Fed. R. Civ. P. 15(a)(2). Where it is requested, "[t]he court should freely give leave when justice so requires." *Id.*

However, a motion to amend may be denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Riverview Health Institute LLC v. Medical Mutual of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. v. Department of Treasury, State of Michigan, Revenue Div.*, 987 F.2d 376, 382–83 (6th Cir. 1993)). Stated differently, allowing an amendment that would subsequently be dismissed under a Rule 12(b)(6) motion does not serve the interests of justice.

---

pleading, discovery, motions, and trial. *Id.*

**ANALYSIS**

I.      **Motion to Amend**

In the Motion to Amend, Cynthia Poole requests leave to file a compulsory counter-complaint "pursuant to Tenn. Code Ann. § 56-7-105." (Docket No. 29 at p. 1.) This statutory provision is designed to penalize insurers that fail to pay policy proceeds in good faith. It is divided into two subsections. Section 56-7-105(a) explictly covers "insurance companies of [Tennessee], and foreign insurance companies and other persons or corporation doing an insurance or fidelity bonding business in this state, in all cases where a loss occurs and they refuse to pay the loss within sixty (60) days after a demand has been made . . . ." Tenn. Code Ann. 56-7-105(a). The standard for deciding liability under this section is whether the refusal to pay was "not in good faith." *See id*. Section 56-7-105(b), on the other hand, covers any "unauthorized foreign or alien insurer or bonding company upon a contract or insurance or fidelity bond issued or delivered in this state to a resident of this state . . . if the insurer or bonding company has failed for thirty (30) days after demand prior to commencement of the action to make payment in accordance with the terms of the contract or fidelity bond . . . ." Tenn. Code Ann. 56-7-105(b). The standard for deciding liability under this section is whether the refusal to pay was "vexatious and without reasonable cause." *See id*.

Cynthia Poole attaches to the Motion to Amend a proposed amended answer and counter-complaint, which asserts that Jackson is a foreign insurance company that is not licensed or authorized to conduct business in Tennessee. (*See* Docket No. 29, Ex. 1 at pp. 1, 4.) The proposed pleading asserts a counter-claim against Jackson for "bad faith" under Tenn. Code Ann. § 56-7-105(b). (*Id*. at p. 4.) The proposed counter-claim does not mention Tenn. Code Ann. §

56-7-105(a).  (*See id., passim.*)  The core of Cynthia Poole's proposed claim under Tenn. Code Ann. § 56-7-105(b) is that Jackson engaged in inadequate investigation or due diligence to ascertain the validity of the competing claims to the Decedent's death benefit, and, thus, Jackson acted improperly by not paying the Policy proceeds to Cynthia Poole prior to filing the instant interpleader action.

Either out of confusion caused by Cynthia Poole's haphazard use of the phrase "bad faith" and its similarity to the "good faith" standard of Tenn. Code Ann. § 56-7-105(a), or out of inattention to the language of the proposed counter-complaint, Jackson's Response in opposition argues that the proposed counter-complaint would be futile because it could not survive a motion to dismiss based upon Tenn. Code Ann. § 56-7-105(a), as Jackson's decision to file an action in interpleader cannot under relevant law be considered one taken in bad faith.  Moreover, Jackson fails to challenge the allegation in the proposed counter-complaint that Jackson is a foreign insurer not licensed to conduct business in Tennessee.

In the Reply, Cynthia Poole highlights Jackson's error as to the applicable section of the Tennessee Code and argues that her proposed counter-complaint must be evaluated under what she posits is the easier-to-meet "vexatious and without reasonable cause" standard of § 56-7-105(b).[7]  Viewed through that different lens, Cynthia Poole contends, the proposed counter-claim would not be subject to dismissal under precedent governing § 56-7-105(a), would not be futile, and should therefore be freely allowed.  Cynthia Poole's argument boils down to this: while Jackson's filing of an interpleader action when faced with competing, adverse demands to the

---

[7] However, Cynthia Poole offers no legal support for any particular interpretation of "vexatious and without reasonable cause" in this context.

Policy proceeds may not reach the level of "bad faith," it could (and does) reach the level of vexatious and unreasonable behavior.

Section 1335 allows interpleader where two or more claimants are "claiming or may claim" to be entitled to money or property. 28 U.S.C. § 1335(a)(1). There is no requirement in Section 1335 that the party filing a statutory interpleader action perform *any* kind of investigation, let alone reach a level of investigation or due diligence that satisfies one of the competing claimants. To the contrary, it is precisely the purpose of an interpleader action to remove the holder of the proceeds from the equation and allow a neutral third party to make determinations as to who is actually entitled to payment. Put simply, Congress has made filing an interpleader without further investigation a statutory opportunity for a party that legitimately faces multiple adverse claims directed against a single fund (and thus fears potential double liability resulting from a decision as to which party is the meritorious claimant). Taking advantage of that statutory opportunity simply cannot be considered vexatious or unreasonable in the absence of any other circumstances of note. This is reflected in the sheer number of interpleader actions that are routinely brought in the federal and state courts under the Federal Rules of Civil Procedures, Congressional statutes, the Uniform Commercial Code, and state rules of procedure and statutes.

Cynthia Poole offers no support for the suggestion that there is an inherently vexatious nature to a run-of-the-mill interpleader action. The scope that she suggests for the "vexatious and unreasonable" standard of Tenn. Code Ann. § 56-7-105(b) would inappropriately swallow large portions of interpleader jurisprudence and would subject, for example, disinterested insurance companies to penalties merely for availing themselves of a common remedy. This conclusion is

buttressed by decisions involving Tenn. Code Ann. § 56-7-105(a) that, beyond merely rejecting accusations of bad faith, observe that availing oneself of the interpleader process is a fundamentally reasonable course of action in the face of competing claims. *See, e.g.*, *Stonebridge Life Ins. Co. v. Horne*, No. W2012-00515-COA-R3-CV, 2012 WL 5870386, at *11-*12 (Tenn. Ct. App. Nov. 21, 2012); *Life Ins. Co. of N. Am. v. Simpson*, No. 08-2446, 2009 WL 2163498, at *3-*4 (W.D. Tenn. Jul. 16, 2009).

Here, Jackson was unquestionably faced with multiple competing claims for the Decedent's death benefit. Cynthia Poole requested payment of the benefit. Poole Cowan wrote to Jackson with allegations of coercion and fraud and made her own claim to the proceeds under a prior beneficiary designation. The adverse claims were legitimate, not fanciful, and Jackson faced threatened potential liability if it paid the Policy proceeds to either competing claimant. This is exactly the type of situation in which an interpleader action is appropriate, and – in the absence of any other evidence as to improper motives – Jackson's decision to withhold payment from Cynthia Poole and initiate this interpleader action pursuant to federal statute was not vexatious or unreasonable. Accordingly, the proposed counter-complaint could not survive a motion to dismiss under Tenn. Code Ann. § 56-7-105(b). Because the requested amendment would be futile, the court will deny the Motion to Amend.[8]

## II. <u>Motion to Discharge</u>

---

[8] There is a separate compelling argument for denial of Cynthia Poole's motion – namely, that Jackson has not "refused to pay" Cynthia Poole, but, rather, simply requested the trial court to determine who should be paid, taking this matter outside the ambit of Tenn. Code Ann. § 56-7-105 altogether. *See Stonebridge*, 2012 WL 5870386, at *10. However, because the court finds that use of a complaint in interpleader is not vexatious or unreasonable, it need not opine on whether Jackson's decision was a "refusal to pay" or not.

Jackson maintains that, as a disinterested stakeholder faced with competing claims, it acted properly and quickly by commencing this interpleader action. (Docket No. 25 at p. 2.) Jackson requests discharge and an order insulating it from liability concerning the funds deposited into the registry of the court. Jackson further requests attorney's fees and costs in the amount of $4,716.72, that were incurred by Jackson in connection with preparing, commencing, and litigating this interpleader action. The court is empowered to grant Jackson's requests pursuant to 28 U.S.C. § 2631.[9] Cynthia Poole's primary (albeit brief) argument in opposition to Jackson's request is that she needs time to pursue her proposed amended answer and counter-complaint. Because the court will deny Cynthia Poole's Motion to Amend, that is not a proper basis upon which to deny Jackson's Motion to Discharge.

To the contrary, Jackson has fulfilled its responsibilities as a disinterested stakeholder here, and the court finds it is proper to discharge Jackson from further involvement in this matter. The court has reviewed Jackson's request for attorney's fees and finds it to be detailed and reasonable. The court will order that the requested attorney's fees and expenses be paid to Jackson out of the corpus deposited with the court.

## **CONCLUSION**

For the foregoing reasons, Claimant Cynthia Poole's Motion to Amend will be denied. The plaintiff's Motion to Discharge will be granted, and the plaintiff will be awarded $4,716.72 in attorney's fees and expenses from the deposited proceeds presently held in the registry of the court.

---

[9] Cynthia Poole's brief argument that the court may only discharge an interpleader plaintiff after hearing the evidence of the case (Docket No. 28 at p. 1) is unsupported and contrary to common practice under 28 U.S.C. § 2361.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge